IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| UNITED ENERGY COAL, INC.        ) | CASE NO. 06-453 |
| ) | |
| Debtor.        ) | Chapter 7 |

## MEMORANDUM OPINION

Rockwood Casualty Insurance Company ("Rockwood"), seeks relief from the automatic stay to permit the distribution of funds to it that are currently being held by Huntington Bank in certain certificates of deposit. Rockwood also seeks relief from the stay for the purpose of authorizing Grant County Bank to recognize and honor drafts presented by Rockwood against certain letters of credit. The certificates of deposit and letters of credit are collateral for Rockwood's issuance of reclamation bonds payable to the Maryland Department of the Environment on behalf of United Energy Coal, Inc. (the "Debtor"). The Chapter 7 trustee for the Debtor (the "Trustee") objects to Rockwood's motion for relief on the basis that Rockwood has not properly perfected a security interest in either the certificates of deposit or the letters of credit.

### I.  BACKGROUND

According to Rockwood, it entered a July 26, 2004 indemnity agreement (the "Agreement") with the Debtor. Under the Agreement, the Debtor is to indemnify Rockwood for any liability that Rockwood incurs as a consequence of its issuance of bonds to the Maryland Department of Environment. The bonds secure any reclamation obligations that the Debtor may incur to the State of Maryland. On March 26, 2007, the Maryland Department of Environment Bureau of Mines notified Rockwood that the Debtor was in violation of certain mining laws, and Rockwood was obligated to pay the State of Maryland $83,100.

1

On January 25, 2007, Rockwood filed its proof of claim in the Debtor's case claiming to be owed a $251,054 secured obligation and a $564,589.50 unsecured obligation. Rockwood asserts that the approximate value of the certificates of deposit is $34,437, and that the letters of credit have an approximate value of $216,617.

Paragraph 7A of the Agreement provides:

7. Security.   To secure payment of any and all obligations of the Principal and Indemnitors to Surety including, without limitation, those arising under or with respect to the Bonds, Principal and/or the Indemnitors or all of them shall grant, transfer, assign, and/or pledge to Surety the following collateral:
   A.   Certain Certificates of Deposit and/or Irrevocable Letters of Credit and/or other forms of collateral that Rockwood deems acceptable that shall be deposited with Rockwood as more fully outlined in Exhibit A executed of even date herewith and attached hereto as Exhibit A.

(Document No. 161, Ex. A, ¶ 7A).

In fact, no contemporaneous Exhibit A was attached to the Agreement. Rather, the collateral on Exhibit A came into existence after the execution of the Agreement. The three letters of credit were issued on February 23, 2004, April 1, 2004, and March 17, 2005. The certificates of deposit were issued on February 2, 2005 and April 25, 2005. The Debtor filed its bankruptcy petition on May 31, 2006.

With regard to the letters of credit, each establishes the right of Rockwood to drawn down the credit by a draft containing language demonstrating that Rockwood has caused a bond to be issued to the Debtor on which a claim may be made. With regard to the certificates of deposit, they are in the name of the Debtor, but attached to each of the certificates is an assignment to Rockwood.

## II. DISCUSSION

The Trustee asserts that Rockwood is not entitled to relief from the automatic stay either because it is not a secured creditor, or because it is an unperfected secured creditor. *E.g.*, *Omega Envtl., Inc. v. Valley Bank NA (In re Omega Envtl., Inc.)*, 219 F.3d 984, 986 n.1 (9th Cir. 2000) ("A creditor holding an unperfected security interest is not entitled to relief from an automatic stay . . . ."); *First Nat'l Bank v. Turley*, 705 F.2d 1024, 1027 (8th Cir. 1983) ("We conclude, therefore, that Mobilehome is not entitled to relief from the automatic stay to reclaim the mobile home because Mobilehome had an unperfected security interest at the time of the filing of the bankruptcy petition."). More specifically, the Trustee asserts

2

that Rockwood is not a secured creditor on the grounds that it failed to include an after acquired property clause in its security agreement, and even if it did, Rockwood failed to perfect that security interest in the letters of credit and the certificates of deposit on the grounds that Rockwood failed to file any financing statement, much less one that included after acquired property.

Rockwood asserts that it is properly perfected in the certificates of deposit and letters of credit, and, moreover, the letters of credit are not property of the Debtor's bankruptcy estate. Because the court finds that Rockwood has properly perfected its interest in the collateral and is entitled to relief from the automatic stay, the court will not address Rockwood's alternative argument that the letters of credit are not property of the Debtor's bankruptcy estate.

### A.    Security Agreement

According to the Trustee, Rockwood failed to include any after acquired property clause in its security agreement with the Debtor, and because no certificate of deposit or letter of credit was in existence at the time of the execution of the Agreement, Rockwood has no security interest in those items. Rockwood asserts, however, that the executed security agreement is sufficiently forward looking to include the certificates of deposit and letters of credit, and that there was never any doubt between Rockwood and the Debtor that those items would serve a security under the Agreement.

Pursuant to W. Va. Code § 46-9-203(a), before a security interest can attach to collateral, it must be enforceable against the debtor with respect to that collateral. A security interest is enforceable against a debtor if the creditor gives value, the Debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party, and if "[t]he debtor has authenticated a security agreement that provides a description of the collateral" § 46-9-203(b). No requirement exists that the collateral be in existence at the time the authenticated security agreement is executed; "a security agreement may create or provide for a security interest in after-acquired collateral." § 46-9-204(a).

In this case, the authenticated security agreement between Rockwood and the Debtor identifies the collateral as "Certain Certificates of Deposit and/or Irrevocable Letters of Credit . . . that shall be deposited with Rockwood as more fully outlined in Exhibit A executed of even date herewith . . . ." (Document No. 161, Ex. A, ¶ 7A). While Exhibit A was attached to the executed Agreement, no items were listed on Exhibit A at the time the Agreement was executed.

3

Section 46-9-108 of the West Virginia Code provides a detailed list of what constitutes a sufficient description of collateral for purposes of executing a security agreement. Namely, it states that "a description of personal . . . property is sufficient, whether or not it is specific, if it reasonably identifies what is described." § 46-9-108(a). Examples of reasonable identification in the statute can include either a specific listing, or a category. § 46-9-108(b)(1-2). The Official Comment reiterates that the statute "rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called 'serial number' test.)." As a statutory rule of construction, the West Virginia Commercial Code is to be liberally construed to promote its underlying purposes and policies, which include the continued expansion of commercial practices through the agreement of the parties. § 46-1-103.

Regarding what constitutes a sufficient description of after-acquired property, the Official Comment provides:

> **After-Acquired Collateral.** Much litigation has arisen over whether a description in a security agreement is sufficient to include after-acquired collateral if the agreement does not explicitly so provide. This question is one of contract interpretation and is not susceptible to a statutory rule (other than a rule to the effect that it is a question of contract interpretation). Accordingly, this section contains no reference to descriptions of after-acquired collateral.

§ 46-9-108 cmt. 3.

Under Paragraph 11(J) of the Agreement, it is to be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. Under Pennsylvania law, "[t]he fundamental rule in interpreting a contract is to ascertain and give effect to the intent of the contracting parties." *Crawford Cent. Sch. Dist. v. Commonwealth*, 888 A.2d 616, 623 (Pa. 2005). In turn, the intent of the parties is embodied in the writing, and a court is not to assume that a contract's language was chosen carelessly, or that the parties were ignorant of the meaning of the language employed. *Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). To the extent that a contractual ambiguity exists, one method for interpreting that ambiguity is to look at the parties course of dealing. *E.g.*, *Commonwealth use of Herzog v. Henry W. Horst Co.*, 72 A.2d 131, 133 (Pa. 1950) ("'[W]hen we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it, as evidenced by their course of dealing under it.'") (citation omitted).

4

Regarding the express language of the security agreement, Rockwood points out that Paragraph 7A refers to certificates of deposit and letters of credit that "shall be deposited with Rockwood." By using this future perfect passive construction, the security agreement is describing an event that has not yet happened, but is expected or planned to happen. Although the security agreement states that the certificates of deposit and irrevocable letters of credit are "more fully outlined in Exhibit A," nothing was outlined on Exhibit A when the Agreement was executed. Of course, Exhibit A only offered a more full description of the collateral, the description of which may have already been sufficiently described in Paragraph 7A itself. Thus, under a plain reading of the Security Agreement, Rockwood and the Debtor contemplated that a future grant, transfer, assignment, and/or pledge of certificates of deposit and/or letters of credit would be made by the Debtor.

This plain reading of the Agreement is supported by the course of dealing between the Debtor and Rockwood. For example, the irrevocable letter of credit dated March 17, 2005 – over one year after the execution of the Agreement – states that Rockwood is only entitled to draw on the letter of credit if it issues a draft accompanied by specific language: "Rockwood . . . has . . . heretofore . . . caused a bond to be executed on behalf of [the Debtor] . . . ." (Document No. 161, Ex. D). No evidence suggests that the bond referred to is one other than that which is subject to the Agreement. Likewise, the assignment accompanying the April 25, 2005 certificate of deposit states that the assignment is being made in consideration of the issuance of surety bonds, and the certificate of deposit is to serve as collateral for all obligations of the Debtor to Rockwood "now or hereafter existing . . . ." (Document No. 161, Ex. F).

Furthermore, the court notes that certificates of deposit and letters of credit are types of collateral that are subject to expiration and/or renewal. For example, the Debtor's April 25, 2005 certificate of deposit has a stated term of 24 months, and, at maturity, will automatically renew. Similarly, the February 23, 2004 letter of credit provides that its expiration date may be extended beyond its February 23, 2005 expiration date for one-year periods. By analogy, in cases involving inventory or accounts – collateral that the trade industry expects to sold, collected, and replaced – a presumption arises that the mere term "inventory" or "accounts" by necessity includes after-acquired inventory and accounts. *See generally*, Keith G. Meyer, *Current Article 9 Issues and Agricultural Credit*, 10 Drake J. Agric. L. 105, 146 (2005) ("Courts are split as to whether attachment occurs when no after-acquired clause exists. The type

5

of collateral involved is generally determinative. In cases involving inventory and accounts where the trade expects inventory and accounts to be sold and collected and then replaced, courts find a rebuttable presumption."). Likewise, for items such as certificates of deposit and letters of credit, which in the ordinary course of business may be renewed and/or subsequently modified, a security agreement listing a certificate of deposit or letter of credit would also seem to include subsequent renegotiation of those items between the debtor and the bank or letter of credit issuer

Therefore, based on a plain reading of the Agreement, as buttressed by the course of dealing between Rockwood and the Debtor, and in consideration of the trade expectations for certificates of deposit and letters of credit, the court concludes that the security agreement in this case sufficiently provides that the Debtor, in the future, would issue certificates of deposit and/or letters of credit to Rockwood as security under the Agreement, and that the security agreement is broad enough to include the subsequent extension, renewal, and/or modifications to those items.[1]

**B.      Perfection**

The Trustee asserts that Rockwood is not perfected in the certificates of deposit or letters of credit because Rockwood failed to file a financing statement. Rockwood states that no financing statement is necessary on the grounds that the certificates of deposit and letters of credit are in its possession and/or control.

As of the commencement of a bankruptcy case, the Trustee has the rights and powers of a judicial lien creditor. 11 U.S.C. § 544(a)(1). Thus, to be successful in a relief of stay motion, the movant must demonstrate that the security interest at issue is properly perfected such that it is entitled to priority over the rights of a judicial lien creditor. *E.g.*, W. Va. Code § 46-9-317(a)(2) ("A security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before . . . The security interest . . . is perfected . . . ."); *In re Sea Island Motor Sales, Inc.*, 72 B.R. 170, 172 (Bankr. D.S.C. 1986) ("'A moving creditor seeking relief from the stay, in addition to carrying the ultimate burden of proof with respect to equity, must establish the validity and perfection of its security interest . . . .'") (citation omitted).

---

[1] The court notes that no security agreement is required when the collateral is a letter of credit right, which is perfected by control. W. Va. Code § 46-5-118(b)(1).

Pursuant to Article 3 of the West Virginia Commercial Code, a "certificate of deposit" is defined as "an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank." W. Va. Code § 46-3-104; *see also* § 46-9-102(47) (defining an "instrument" to be "a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment."); § 46-9-102 cmt. 12 (clarifying that an uncertificated deposit account is a "deposit account" whereas a certificate of deposit is an "instrument" if the certificate of deposit is given in the ordinary course of the business). Under West Virginia law, a certificate of deposit, even one that is marked as non-negotiable or non-transferable, is an instrument for purposes of Article 9.[2] *Cadle Co. v. Citizens Nat'l Bank*, 490 S.E.2d 334, 338-39 (W. Va. 1997); *see also Omega Envtl., Inc.*, 219 F.3d at 987 (concluding that a non-negotiable certificate of deposit was an "instrument" under Article 9 of the Uniform Commercial Code); *McFarland v. Brier*, 850 A.2d 965, 973-77 (R.I. 2004) (same).

To perfect a security interest in an instrument, the Commercial Code requires either that a financing statement be filed or that the secured creditor have possession of the instrument. *E.g.*, W. Va. Code §§ 46-9-312(a) ("A security interest in . . . instruments . . . may be perfected by filing."); 46-9-313(a) ("[A] secured party may perfect a security interest in . . . instruments . . . by taking possession of the collateral."). As explained by Professor Cardi:

> CD's have been included in Prior 9 coverage and classified as either an "instrument" if evidenced by a written right to payment or negotiable instrument, or a "general intangible" if not represented by such a writing. If the CD is classified as an instrument, under Prior 9

---

[2] This treatment is not uniform. Some states treat non-negotiable and non-transferable certificates of title as deposit accounts. *See, e.g.*, *In re Verus Investment Management, LLC*, 344 B.R. 536, 543 (Bankr. N.D. Ohio 2006) (concluding that a non-negotiable, non-transferable certificate of deposit was a deposit account perfected only by control); James Charles Smith, *Modernizing the Law of Secured Transactions: Nonuniform Provisions of Georgia's Revised Article 9*, 37 Ga. L. Rev. 205, 218 (2002) ("The official text of Revised Article 9 did not resolve the split of authority as to the characterization of nonnegotiable, nontransferable certificates of deposit as among deposit accounts, instruments, general intangibles, and investment property.").

7

> it can be perfected only by possession. If classified as a general intangible, it can be perfected only by filing.
>
> Under Revised Article 9, a CD will be an instrument if it is negotiable or otherwise in a writing that evidences a right to payment . . . ." Under Revised 9, a security interest in an instrument can be perfected by possession or by filing. . . .
>
> A secured party who has a perfected security interest in a CD on the effective date, will continue to have a perfected security interest if the CD is considered an instrument as long as the secured party maintains possession which has constituted the perfection from the start. The secured party will also be able to file a financing statement to continue the perfection under the Revised Act if it so wishes, but possession will be sufficient to continue the perfection. . . .

Vincent Paul Cardi, *Preserving Existing Security Interests Under Revised Article 9 of the Uniform Commercial Code: A Concise Summary of the Transition Rules and Some Recommendations for Secured Parties*, 103 W. Va. L. Rev. 289, 312-13 (2001).

Here, the Debtor pledged the two certificates of deposit to Rockwood.[3] A "pledge," in the context of secured transactions, is a "bailment or other deposit of personal property to a creditor as security for a debt or obligation." *Black's Law Dictionary* 1192 (8th ed. 2004). In other words, a "pledge" is possession. Accordingly, because Rockwood was in possession of the certificates of deposit as of the Debtor's May 31, 2006 bankruptcy petition date, it was a perfected secured creditor entitled to prevail over the Trustee's status as a judicial lien creditor.

Regarding the letters of credit, the West Virginia Commercial Code defines a "letter of credit" to be "a definite undertaking . . . by an issuer to a beneficiary at the request or for the account of an applicant . . . to honor a documentary presentation by payment or delivery of an item of value." W. Va. Code § 46-5-102. In turn, a "letter of credit right" is defined as "a right to payment or performance under a letter of credit . . . ." § 46-9-102(51). Letter of credit rights are perfected by control. § 46-9-203(b)(3)(D); Terry M. Anderson, Marianne B. Culhane, Catherine Lee Wilson, *Attachment and Perfection of*

---

[3] The parties stipulated that they would stand on their papers and arguments to the court in lieu of presenting evidence and testimony. Rockwood's claim in its motion for relief from stay that the certificates of deposit were pledged to it by the Debtor was not contested.

8

*Security Interests Under Revised Article 9: A "Nuts and Bolts" Primer*, 9 Am. Bankr. Inst. L. Rev. 179, 219 (2001) ("Revised Article 9 expands the types of collateral in which a secured creditor may perfect by obtaining control to include . . . letter-of-credit rights . . . ."); G. Ray Warner, *Preparing for the New Article 9*, 19-1 A.B.I. J. 6 (Feb. 2000) ("[T]he concept of perfection by 'control' that first appeared in the 'investment property' rules (added by current § 9-115) has been extended to apply to security interests in . . . letter of credit rights . . . ."). As explained in one article:

> [C]ontrol of collateral in a secured transaction serves two functions. First, control functions as a mechanism of attachment. By obtaining control of the collateral pursuant to an agreement between the debtor and the secured party, the secured creditor will satisfy one of the requirements in section 9-203(a)(3) for attachment of the security interest. Second, control serves as the method of perfecting the security interest. In transactions involving deposit accounts, for example, control serves both functions because control is the exclusive mechanism for perfecting a security interest in a deposit account as original collateral.
>
> . . . .
>
> Sometimes, the seller of the goods will use the letter-of-credit as collateral in a separate transaction with a third party. In an attempt to grant a security interest, the third party must obtain "control" over the letter-of-credit rights. According to Revised Article 9, "control" over letter-of-credit rights is obtained when the bank which issues the letter-of-credit "consents to an assignment of the proceeds of the letter-of-credit under section 5-114(c) or otherwise applicable law or practice."

9 Am Bankr. Inst. L. Rev. at 219, 223-24; *see also* W. Va. Code § 46-9-107 ("A secured party has control of a letter-of-credit right to the extent of any right to payment or performance by the issuer . . . of proceeds of the letter of credit . . . .").

In this case, the letters of credit were issued by Grant County Bank directly to Rockwood, and they authorize Rockwood to write drafts drawing down the letter of credit. No other party is in possession of, or has rights in, the letters of credit. Accordingly, Rockwood has control over the letters and, therefore, has a perfected security interest in them.

### III. CONCLUSION

For the above stated reasons, the court finds that Rockwood has a perfected security interest in the certificates of deposit and letters of credit. Cause exists to lift the automatic stay in this case to allow Rockwood to collect on the certificates of deposit and letters of credit because it has incurred liability to

the State of Maryland on its reclamation bonds, and under the Agreement, it is entitled to indemnity from the Debtor. Because one of the letters of credit will expire in a few days time, the court will waive the ten-day stay of its order granting Rockwood's motion. A separate order is attached pursuant to Fed. R. Bankr. P. 9021.